**[J-8-2024] [MO: McCaffery, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| CIRCLE OF SEASONS CHARTER SCHOOL, | : | No. 99 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court dated March |
| | : | 14, 2022 at No. 1255 CD 2020 |
| | : | Reversing the Order of the Lehigh |
| v. | : | County Court of Common Pleas, |
| | : | Civil Division, dated November 9, |
| | : | 2020 at No. 2019-C-3837 and |
| NORTHWESTERN LEHIGH SCHOOL | : | Remanding with directives to |
| DISTRICT, | : | transfer to the County of Lehigh |
| | : | Court of Assessment Appeals. |
| Appellant | : | |
| | : | ARGUED: March 5, 2024 |

**CONCURRING OPINION**

**JUSTICE MUNDY**                    **DECIDED: September 26, 2024**

Pursuant to the County Assessment Law ("Assessment Law"), 53 Pa.C.S. §§ 8801-8868, a county assessment office has the authority to change the assessment of an existing property so long as it provides the property's owner notice in accordance with Section 8844 of the statute. 58 Pa.C.S. § 8841(c). Section 8844 requires the county assessment office to mail the property owner notice of any change in assessment, which must include, *inter alia*, the notice's mailing date. *Id.* at § 8844(a)(1). The notice must also state "that any persons aggrieved by the assessment … may file an appeal to the board within 40 days of the date of the notice." *Id.* at § 8844(b). While a defective notice will not be grounds for setting aside an assessment, "upon proof of defective notice, the aggrieved party or taxing district shall have the right to a hearing before the board." *Id.* at § 8845.

It is undisputed that the Notices the county assessment board sent to the Charter School changing the status of the school's properties from "Non-Taxable Assessed" to "Taxable Assessed" did not include the Notices' mailing date. Therefore, under a plain reading of the Assessment Law, the Notices were defective, and the Charter School was entitled to a hearing before the board to challenge its new assessment. Based in part on the defective nature of the Notices, the Commonwealth Court concluded the Charter School was entitled to such a hearing in this matter.

The Majority criticizes the Commonwealth Court's holding due to the fact that the Charter School conceded it was aware of the change in the assessment as of November 2017 when it received the School District's reminder notices and subsequently paid the delinquent taxes. Maj. Op. at 20. The Assessment Law does not indicate that a taxpayer is not entitled to a hearing as a result of a defective notice if they were aware of the change in the assessment or if they paid the newly assessed taxes. Rather, the statute simply states that a taxpayer is entitled to a hearing before the board if the new assessment notice is defective. 58 Pa.C.S. § 8845 ("[U]pon proof of defective notice, **the aggrieved party or taxing district shall have the right to a hearing before the board**.") (emphasis added). By focusing on this irrelevant detail, the Majority has created a new hurdle taxpayers must overcome in order to receive the hearing they are entitled to as a result of defective notices that does not have any foundation in the text of the Assessment Law.

That being the case, as aptly observed by the Majority, the Charter School filed an annual appeal and had a hearing in front of the board, where it failed to seek retroactive application of its tax-exempt status, a redesignation of its 2017 and 2018 assessment status, request a refund of the 2017 taxes paid, or seek a discharge of the 2018 tax invoices. Maj. Op. at 20. The Charter School further failed to appeal the board's decision

granting its properties tax exempt status effective January 1, 2019. The Charter School thus received the hearing before the board it was entitled to as a result of the defective Notices and nothing in the Assessment Law provides that a defective notice entitles a taxpayer to multiple hearings before the board. Thus, the Charter School's failure to raise all of its issues at that hearing resulted in waiver of those issues. Consequently, I agree with the Majority's determination that, under the specific circumstances of this case, the Charter School is not entitled to *nunc pro tunc* relief in the form of another hearing before the board.

While this outcome results in the School District being permitted to retain the taxes erroneously paid by the Charter School, the School District is not without fault here. The School District argues that "a charter school could presumably own property before they obtain their charter or after their charter is revoked, and in those instances they would absolutely not be entitled to [tax] exemption." Appellant's Reply Brief at 3. That is clearly not the situation in this case, as the School District concedes the Charter School is entitled to tax exemption. *See* Appellant's Brief at 27. Indeed, the School District approved the Charter School's charter beginning in the 2013-2014 school year. Then in September 2016, the School District renewed the charter for an additional five-year term. At the time of the charter's renewal, it was operating its charter school from the subject properties, then owned by Pennsylvania State University. As such, the School District **knew** the Charter School was operating a charter school on the subject properties, and thus entitled to a tax exemption, at the time it first sent the Charter School real estate tax bills in July 2017 and reminder invoices in November 2017, demanding $122,980.84 in taxes to which it knew it was not entitled. The School District compounded its actions by sending the Charter School an annual tax invoice in July 2018 for the 2018 tax year, at the same

mailing address the Charter School had been operating at since the School District initially granted the charter for the 2013-2014 school year.

After the Charter School paid the taxes and brought the issue to the School District's attention by filing an annual appeal challenging the assessment of the subject properties as taxable in July 2018, the School District failed to acknowledge the Charter School's clear right to a tax exemption and return the tax payments it was not entitled to have received. Instead, the School District has vigorously fought throughout the litigation for the right to retain its undeserved financial windfall. The School District argues it would be "unjust" to force it to return taxes paid by the Charter School. *See* Appellant's Brief at 27. To the contrary, what is unjust is permitting taxing entities in this Commonwealth to knowingly collect taxes they are not entitled to and then allowing them to retain those monies simply because the taxpayer has already paid them, and the taxing entity has already spent them. Unfortunately, due to the Charter School's failure to raise the issue at its hearing in front of the board or appeal the board's decision, the School District will receive the financial windfall it has been seeking. While I am constrained to join the Majority's disposition, I note my expectation that our public institutions, especially school districts which are charged with educating our children, exercise good faith and candor in taxing entities and individuals within their districts. In my view, the School District has fallen short of this expectation.